UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 12-273 (RHK/LIB) |
| v. | **REPORT AND RECOMMENDATION** |
| Roderick Arlyn Sayers, a/k/a "Mister" | |
| Defendant. | |

This matter came before the undersigned United States Magistrate Judge upon Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 20]. The case has been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on January 15, 2013, regarding the suppression motion and both parties' discovery motions.[1] For reasons outlined below, the Court recommends the motion be DENIED.

I. BACKGROUND

Roderick Arlyn Sayers, a.k.a. "Mister" (Defendant), is charged a single count of assault resulting in serious bodily injury on or about November 25, 2011, in violation of 18 U.S.C. §§ 113(a)(6), 1151, and 1153(a). (Indictment [Docket No. 1]). On November 26, 2011, tribal law enforcement officers on the Red Lake Indian Reservation took two statements from Defendant. (See Part II, infra). The Defendant was indicted on November 5, 2012, and brought this motion to suppress, [Docket No. 20], on December 28, 2012.

---

[1] The discovery motions were the subject of a separate Order. [Docket No. 29].

## II.   FACTS[2]

On the night of November 25, 2011, Red Lake Police Department Officer Alexandra Dow (Officer Dow)[3] was patrolling on the Red Lake Indian Reservation, along with Officer Harold Graves Jr. (Officer Graves), a trainee. (Tr. [Docket No. 34], at 10:22-11:2). Officer Dow and Officer Graves (the "officers") were in a squad car, and both were in uniform. (Id. at 14:12-17). At approximately 10:30 p.m., Officer Dow and Officer Graves (the "officers") were dispatched to Red Lake Hospital, where J.D. reportedly was being treated after an alleged assault. (Id. at 11:8-11:16). The officers took a statement from J.D., and took pictures of her injuries. (Id. at 11:21-22). One of J.D.'s front teeth had been knocked loose, and she had blood on her face. (Id. at 11:25-12:1). J.D. told the officers that she had borrowed Defendant's van, and when she returned it he was upset about some pictures on a mobile phone and punched her. (Id. at 12:13-14, 13:17-19). The officers then left to speak with Defendant and to place him under arrest. (Id. at 13:24, 17:14-20).

When the officers arrived at Defendant's residence, they were unable to get anyone to come to the door. (Id. at 14:23-15:1). However, Defendant opened a window and spoke with the officers through the window. (Id. at 14:25-15:5). Officer Dow was approximately ten (10) feet from Defendant, with a porch rail between them. (Id. at 16:9-19, 15:13-15). Defendant told Officer Dow that J.D. had assaulted him, pulling his hair. (Id. at 16:23-17:2, 19:9-15). Officer Dow testified that she did not tell Defendant that she intended to arrest him because she wanted him to come outside and speak with her. (Id. at 17:21-18:1, 18:4-6). Officer Dow told Defendant to come outside, but he refused. (Id. at 17:7-11, 18:2-3). The entire interview took

---

[2] The facts in this section are drawn from the testimony of Red Lake Police Department Sgt. Alexandra Dow at the January 15, 2013, hearing. A transcript of that hearing is in the record. [Docket No. 34].

[3] Ms. Dow's promotion to Sergeant occurred after the incident at issue here, but before her testimony at the hearing on January 15, 2013. Because she had not yet been promoted at the time these events took place, the Court will refer to her as Officer Dow.

only "a matter of minutes," and Officer Dow testified that the officers did not draw their weapons and never threatened the Defendant. (Id. at 18:10-11, 18:23-19:2). When Defendant refused to come outside, the officers left. (Id. at 17:12-13).

Approximately an hour later, the officers spotted Defendant's van pulling in toward Red Lake Hospital. (Id. at 19:23-24, 20:7-11). They activated their lights and pulled him over with the intention of arresting him. (Id. at 20:16-19, 24:11-14). The officers exited their squad car, and Officer Dow approached the driver's side of Defendant's van while Officer Graves remained at the rear passenger side. (Id. at 22:5-10). The Defendant remained in his vehicle, about five (5) feet from Officer Dow. (Id. at 21:25-22:2, 22:11-13). Officer Dow asked Defendant why he was coming to the hospital, and he said that he wanted medical attention because J.D. had kicked him in the groin area. (Id. at 21:11-18). Officer Dow did not draw her weapon or take out her handcuffs, but she did tell him to exit his vehicle. (Id. at 22:14-17, 23:3-4). Defendant exited his vehicle, upon which Officer Dow told him that he would be arrested. (Id. at 22:21-25, 24:15-18). Officer Graves placed Defendant in handcuffs and escorted him to the squad car. (Id. at 22:25-23:7). At that point, the officers advised Defendant of his Miranda rights.[4] (Id. at 23:8-10). There was no further conversation between Defendant and the officers. (Id. at 24:4-8). Defendant ultimately was taken to the Red Lake Jail, where he was booked on a charge of criminal domestic violence. (Id. at 23:14-20). At the jail, Defendant was provided with paperwork in case he wanted to make a statement, but he never returned the papers to Officer Dow. (Id. at 23:25-24:2).

---

[4] See Miranda v. Arizona, 384 U.S. 436 (1966).

## III. DISCUSSION

### A. Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). However, law enforcement officers "are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). "Miranda warnings are required only where there has been such a restriction on a person' freedom as to render him in custody." Id.

The Eighth Circuit considers six (6) factors when determining whether a suspect is in custody:

> (1) Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012) (citing United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)). "The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three

indicia are aggravating factors which, if present, aggravate the existence of custody." United States v. Axsom, 289 F.3d 496, 500-01 (8th Cir. 2002). Moreover, those factors are not exclusive; "[t]he analysis depends upon a review of the totality of circumstances, and '[t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview.'" Sanchez, 676 F.3d at 630-31 (citing United States v. Aldridge, 664 F.3d 705, 711 (8th Cir. 2011)). The ultimate determination is based on the totality of the circumstances, with none of the above factors being dispositive, and a particularly strong showing on one factor may compensate for a deficiency on another factor. Griffin, 922 F.2d at 1347. The key inquiry is whether there was a formal arrest or restraing of a defendant's movement to the degree associated with a formal arrest. Stansbury, 511 U.S. at 322.

**B. Analysis**

Based on the facts of the present case, the totality of the circumstances indicates that Defendant was not in custody on the morning of November 26, 2011, neither during his conversation with Officer Dow at his residence, nor during his conversation with her pursuant to the traffic stop. Therefore, the officers were not required to provide the Defendant with a rights warning consistent with Miranda.

**1. Statements Defendant Made from His Residence**

The three mitigating factors tend to show that Defendant was not in custody when he spoke with the officers at his residence. The Court looks primarily to the third factor, and concludes that Defendant voluntarily acquiesced to questioning. Defendant came to the window, opened the window, and voluntarily spoke with Officer Dow through the window. Defendant argues that "when the confrontation between the suspect and the criminal justice system is instigated at the direction of law enforcement authorities, rather than the suspect," as it was in the

present case, "custody is more likely to exist." (Def.'s Mem. Supp. Mot. Suppress [Docket No. 31], at 4 (citing United States v. Longbehn, 850 F.2d at 450, 451 (8th Cir. 1988)); see also Griffin, 922 F.2d at 1351. However, the Eighth Circuit has made it clear that the question of who initiated the interview is not dispositive for this factor, much less for the broader question of whether the interview was custodial. United States v. Axsom, 289 F.3d 496, 501 (8th Cir. 2002) ("In considering the third mitigating factor, the district court correctly found that Axsom did not initiate or arrange for the questioning. *However, the court failed to analyze the disjunctive prong of the third mitigating factor – whether the defendant voluntarily acquiesced to requests by federal agents to answer questions*" (emphasis added)).

Moreover, both Longbehn and Griffin provide far greater indicia that the interviews were not voluntary. In Longbehn, the suspect was himself a police officer, and was detained at his place of employment after hours. Longbehn, 850 F.2d at 451-52. His interrogators prevented him from using his own vehicle, and instead transported him to police headquarters in a police vehicle. Id. at 452. Police then transported him to his home, where they forced him to let them in and continuously chaperoned him as they executed the search warrant. Id. All the while, he was being "overtly interrogated by three separate officers." Id. In the present case, the officers did not try to enter Defendant's residence, and they left when he refused to come outside.

In Griffin, the defendant arrived at home to find agents of the Federal Bureau of Investigation (FBI) already inside. Griffin, 922 F.2d at 1346. The agents met the defendant as he entered the home, and was immediately isolated from his parents. Id. at 1354-55. He was never told that he was not under arrest, that he could refuse to answer questions, or that he could ask the FBI agents to leave. Id. at 1354. Even considering all of those factors, the Griffin court only found that there were no mitigating factors after also analyzing the second factor and

6

finding that the defendant was escorted around his own home at all times and, thus, "was restrained to a degree commonly associated with formal arrest." Id. In the present case, Defendant was inside his home, and the officers never came inside. Defendant could have chosen not to come to the window, or he could have listened at the window and refused to answer Officer Dow's questions. Instead, he voluntarily chose to answer her questions. Consequently, the Court finds that the third mitigating factor weighs heavily in favor of a finding that the interview was not custodial.

Neither the first nor the second mitigating favors tend to mitigate in favor of the government. There is no evidence indicating that the officers told Defendant that he could terminate questioning, or that he could leave or ask the officers to leave, or that he would not be arrested. Additionally, while Defendant was free to move about his home, he did not try to leave the residence itself. However, neither of these facts is, by itself, dispositive.[5] Here, the totality of the circumstances, and in particular the strong evidence that Defendant voluntarily acquiesced to questioning, is sufficient to tip the scales toward a finding that he was not in custody. See Griffin, 922 F.2d at 1347 (strong showing on one factor may make up for deficiency in other factors).

Furthermore, none of the three aggravating factors is present during the interview at Defendant's residence. The fourth factor does not weigh in favor of custody, because there is no evidence that the officers used strong-arm tactics or deceptive stratagems. The officers did not display their weapons, nor did they yell at or otherwise threaten Defendant. See Axsom, 289

---

[5] See, e.g., United States v. Mottl, 946 F.2d 1366, 1370 (8th Cir. 1991) (although FBI agents neither told defendant that he could terminate the interview at will, nor told him that they did not intend to arrest him, the remaining factors allowed the district court to find the interview was not custodial); United States v. Wallace, 323 F.3d 1108, 1112-13 (8th Cir. 2003) (interview was not custodial despite agents' failure to inform defendant that questioning was voluntary, that she was free to leave, or that she was not under arrest); Sanchez, 676 F.3d at 631 (where defendant did not attempt to leave, second factor is unclear because "it is unclear what would have happened if she had"); United States v. Ollie, 442 F.3d 1135, 1138 (8th Cir. 2006) (where defendant "never tried to move about or leave . . . it is impossible to determine if [he] retained his freedom of movement").

7

F.3d at 502 (finding no strong-arm tactics where officers "did not adopt a threatening posture toward [defendant], display their weapons, or make a physical show of force during the questioning"); United States v. Brown, 990 F.2d 397, 400 (8th Cir. 1993) (finding no strong-arm tactics where investigators "did not yell at [defendant], [or] threaten him"). Nor did the officers use any deceptive stratagems, such as the good-cop, bad-cop routine. See Brown, 990 F.2d at 400 (citing "good-cop, bad-cop routine" as example of deceptive stratagem); United States v. Carter, 844 F.2d 368, 372 (8th Cir. 1989) ("Mutt and Jeff" technique contributed to police-dominated atmosphere (citing Miranda, 384 U.S. at 452, 455)). The officers "asked straightforward questions and [Defendant] gave straightforward answers." Axsom, 289 F.3d at 502 (internal quotations omitted). Finally, the officers did not make any promises to Defendant. Thus, the fourth factor does not weigh in favor of a finding of custody.

Nor does the fifth factor weigh in favor of a finding of custody, because the interview was not police dominated. In considering this factor, courts examine such considerations as the place and length of the interview. Griffin, 922 F.2d at 1352. Defendant was inside his own home throughout the interview, and in the Eighth Circuit there is a presumption that an interview in the defendant's home is not police dominated. United States v. Czichray, 378 F.3d 822, 826-27 (8th Cir. 2004). In Griffin, the Eighth Circuit indicated that an interview in a defendant's home might be police dominated when, for example, officers isolate the defendant from family or friends who might offer support, or when officers otherwise "assert[] their dominion over the interrogation site." Griffin, 922 F.2d at 1355.[6] However, none of those factors are present in

---

[6] See also Id. at 1355, n.15:
> It is the accepted logic that an interrogation in familiar surroundings such as one's home softens the hard aspects of police interrogation and moderates a suspect's sense of being held in custody. Nonetheless, it is not difficult to envision that a suspect's sense of captivity can actually be intensified by the intrusive and intimidating environment created when agents of the law take control of a person's private residence. After all, a person can not reasonably expect to be free anywhere if not within the refuge of his home.

8

this case, where Defendant remained inside his home while keeping the officers outside, about ten (10) feet away from him and separated from him by a window (which he opened and could close) and a porch railing. Defendant notes that the officers both were in uniform and arrived in their squad car. (Def.'s Mem. Supp. Mot. Suppress [Docket No. 31], at 5). However, the mere fact that the interview was conducted by uniformed officers is insufficient to warrant a finding that the interview was police dominated. See, e.g., United States v. Hephner, 103 Fed. App'x 41, 44, 48 (8th Cir. 2004) (interview by uniformed trooper in trooper's vehicle was not police dominated); United States v. Mehilove, Crim. No. 11-219 (SRN/SER), 2011 U.S. Dist. LEXIS 121247, at *12 (Sept. 15, 2011) (Rau, M.J.) ("The presence of weapons and inspector uniforms did not constitute a police-dominated atmosphere."), adopted by Crim No. 11-219 (RHK/SER), 2011 U.S. Dist. LEXIS 117583 (Oct. 12, 2011) (Kyle, J.). In fact, where the courts have found that this factor weighs in favor of custody, the atmosphere was far more police dominated than in the present case.[7] Thus, the fifth factor does not weigh in favor of a finding of custody.

The sixth and final factor is the easiest to resolve: Defendant *was not arrested* at the conclusion of the interview, therefore this factor does not support a finding of custody. Defendant emphasizes the fact that Officer Dow *intended* to arrest him. (Def.'s Mem. Supp. Mot. Suppress [Docket No. 31], at 4-5). However, "focus alone is insufficient to establish a custodial situation, [as] officers could obviously focus an investigation on a suspect without taking him into custody or restraining his freedom of movement." United States v. Carter, 884 F.2d 368, 370 (8th Cir. 1989). Moreover, the officers never told Defendant that they intended to

---

(Internal citation omitted). However, another panel of the Eighth Circuit subsequently questioned the Griffin court's holding that the interview in that case was police dominated. Czichray, 378 F.3d at 827-28.

[7] See, e.g., Sanchez, 676 Fl3d at 631 (interview was police dominated when defendant was taken to small room in courthouse basement normally used by prosecutors and isolated with two law enforcement officers); Griffin, 922 F.2d at 1354-55 (interview was police dominated when officers confronted defendant inside his home and isolated him from his parents);

9

arrest him, thus their uncommunicated intent could not contribute to a finding that the atmosphere was custodial. Consequently, the sixth factor does not weigh in favor of a finding of custody.

Defendant, citing Griffin, also notes that the court may consider the fact that he was aware of the evidence against him. (Def.'s Mem. Supp. Mot. Suppress [Docket No. 31], at 3). As Defendant rightly notes, however, even the Griffin court limits the weight of this consideration, noting that it contributes only "to the suspect's *sense of custody*," and not to whether the Defendant actually is in custody. Griffin, 922 F.2d at 1348 (emphasis added). Griffin pointed to Carter where the defendant "was confronted with damning evidence of guilt," in particular the fact that he had in his wallet cash and a bearer check that officers had marked as part of their investigation. Carter, 884 F.2d at 369, 372. However, here the record contains no evidence that Defendant was presented with such "damning evidence." Thus, the Court does not find that this additional factor weighs in favor of a finding that the interview was custodial.

Upon the totality of the circumstances, the Court finds that Defendant was not in custody when he spoke with Officer Dow and Office Graves from inside his home on November 26, 2011. Although Defendant was not expressly told that he was not under arrest, or that he could terminate the interview or leave the scene, he voluntarily acquiesced to questioning, and there is no evidence that his freedom of movement was restricted. Defendant was in his own home and was physically separated from Officer Dow by about ten (10) feet, by a porch railing, and by a window that he controlled. The interviewing officers made no threats or promises, nor in any other way used strong-arm tactics or deceptive stratagems, and the interview was not police dominated. Finally, Defendant was not arrested at the end of the interview. A reasonable person in Defendant's position would not "have felt that he or she was not at liberty to terminate the

interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995). Moreover, the Defendant's freedom was not restrained to a degree associated with formal arrest requiring a Miranda warning.

Consequently, the Court recommends that, with respect to statements Defendant made to the officers at his home on November 26, 2011, the Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 20] be DENIED.

### 2. Statements Defendant Made from His Vehicle[8]

Much of the analysis above is applicable here. As with the interview at Defendant's residence, although he was never advised by the officers that he was not under arrest, that he could terminate questioning, or that he was free to leave, Defendant voluntarily acquiesced to questioning. Like the first interview there is no evidence that the officers used strong-arm tactics or deceptive stratagems.

However, unlike the first interview, Defendant was arrested immediately following this interview.

For the remaining Griffin factors—whether Defendant had unrestricted freedom of movement, and whether the atmosphere was police dominated—the Court's analysis is heavily influenced by the general rule that "the temporary and relatively nonthreatening detention involved in a traffic stop . . . does not constitute Miranda custody." Maryland v. Shatzer, 599 U.S. 98, __, 130 S. Ct. 1213, 1224 (2010) (internal citation omitted);[9] Berkemer v. McCarty, 468 U.S. 420, 439-40 ("the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in Miranda itself, . . .

---

[8] Sgt. Dow testified that Defendant was arrested immediately upon exiting his vehicle, and that following his arrest he was read his Miranda rights. Moreover, there is no evidence that Defendant made any statement to the officers at any time after he exited his vehicle. Therefore, for purposes of this Part, the Court considers only whether the officers' questioning of Defendant while he was inside his vehicle, prior to arrest, constituted a custodial interview.
[9] Pagination in the U.S. Reporter is not yet available.

[and] persons temporarily detained pursuant to such stops are not 'in custody' for purposes of Miranda) (internal citations omitted); see also United Sattes v. McGauley, 786 F.2d 888, 890-91 (8th Cir. 1996) "No Miranda warning is necessary for persons detained for a Terry[10] stop.") (citing Berkemer).

The Court finds instructive this District's decision in United States v. Mudgett. Crim. No. 11-290 (MJD/JSM), 2012 U.S. Dist. LEXIS 31720 (D. Minn. Feb. 22, 2012) (Mayeron, M.J.), adopted by 2012 U.S. Dist. LEXIS 31718 (D. Minn. Mar. 9, 2012) (Davis, C.J.). In Mudgett, the defendant was under surveillance by the Drug Enforcement Administration (DEA) as part of an investigation into a drug trafficking operation, when the surveilling officers asked a Minnesota State Trooper to make a traffic stop of the defendant's vehicle. Id. at *4-9. The trooper effected the stop, contacted the DEA agents to confirm he had the right vehicle, and then returned to the vehicle and asked the defendant to step outside. Id. at *9-13. The defendant was not handcuffed or otherwise restrained. Id. at *13. However, the defendant was not free to leave, and he was subjected to a pat-down after he put his hands in his pockets. Id. The trooper wrote out a formal warning for two traffic violations, then asked the defendant if he had drugs in the vehicle. Id. The defendant denied having drugs in the vehicle, but when asked if he would consent to a search he refused to consent, telling the trooper that "his kid was a pothead, and he might have some pot in the car." Id. at *14. After the trooper told the defendant that he would walk his dog around the vehicle, the defendant "became very talkative." Id. The dog alerted, and when the trooper asked the defendant why he thought the dog had alerted, the defendant replied that it might be his son's marijuana. Id. at *15. The trooper ordered the defendant to stand under a nearby light pole while the dog searched his vehicle. Id. at 14. The search

---

[10] Terry v. Ohio, 392 U.S. 1 (1968).

produced several baggies containing approximately one pound of what appeared to be methamphetamine. Id. at 15. At that point, the trooper arrested the defendant. Id. at *16.

The defendant in Mudgett sought to suppress statements he made during the stop, arguing that he was effectively in custody from the time of the traffic stop. Id. at 26. After reciting the six Griffin factors, the court also noted that the fact that the incident was a traffic stop was "[s]ignificant to this Court's analysis." Id. at *30. The court quoted extensively from Berkemer, in which the U.S. Supreme Court first acknowledged that "a traffic stop significantly curtails the freedom of action of the driver," but then held that "questioning incident to an ordinary traffic stop is quite different from stationhouse interrogation," even when the interviewer is "an armed, uniformed officer. Mudgett, 2012 U.S. Dist. LEXIS 31720, at *30-31 (quoting Berkemer, 468 U.S. 436-39). The court found that the defendant was not physically restrained, that no strong-arm tactics or deceptive stratagems were employed, and that the atmosphere was not police dominated. Id. at *31-32. While acknowledging that the defendant ultimately was arrested at the scene, the court nonetheless concluded based on the totality of the circumstances that the defendant was not in custody when he spoke with the officers prior to his arrest, and therefore that no Miranda warning was required. Id. at *32-33.

We find the circumstances in the present case to be substantially similar. As in Mudgett, the Defendant was not initially told that he would not be arrested, and in fact he was arrested. As in Mudgett, the Defendant did not initiate the interview, but he did voluntarily acquiesce to questioning. As in Mudgett, the officers did not use any strong-arm tactics or deceptive stratagems. However, in two regards, the interview in the present case was even less like a custodial interview than the one in Mudgett. In Mudgett, the defendant was ordered out of his vehicle, subjected to a pat down, and was told where to stand, yet the court nonetheless found

13

that "prior to his arrest, at no time was he physically restrained during the stop and Trooper Schneider's investigation." Id. at *32. In the present case, the Defendant was allowed to remain in his vehicle during questioning. Additionally, in Mudgett the atmosphere was not police dominated where the defendant was confronted with two uniformed officers and a canine. See United States v. Banks, Crim. No. 05-426 (JNE/FLN), 2006 U.S. Dist. LEXIS 20967, at *16 (D. Minn. Feb. 21, 2006) (Noel, M.J.) (presence of canine contributes to finding that atmosphere was police dominated), adopted by 2006 U.S. Dist. LEXIS 20814 (D. Minn. Mar. 30, 2006) (Ericksen, J.). In the present case, Defendant was confronted only by two uniformed officers.

Upon the totality of the circumstances, the Court finds that Defendant was not in custody when he spoke with Officer Dow from inside his vehicle on November 26, 2011. The Defendant's freedom was not restrained to a degree associated with formal arrest requiring a Miranda warning. Consequently, the Court recommends that, with respect to statements Defendant made to the officers from inside his vehicle on November 26, 2011, the Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 20] be DENIED.

IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 20] be **DENIED**.


Dated: February 6, 2013                           s/Leo I. Brisbois
                                                  LEO I. BRISBOIS
                                                  United States Magistrate Judge

**N O T I C E**

      Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by February 20, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.